Dung NGO, Plaintiff,

v.

STANDARD TOOLS & EQUIPMENT,
CO., INC. Defendant.

Civ. A. No. PJM 99–1186.

United States District Court,
D. Maryland,
Southern Division.

Oct. 31, 2000.

Louis B. McKnew, David J. Kaminow, Rockville, MD, for plaintiffs.

Kevin B. Karpinski, Allen, Johnson, Alexander & Karp, Baltimore, MD, for defendants.

### MEMORANDUM OPINION

DAY, United States Magistrate Judge.

This products liability case arises from injuries Plaintiff sustained on January 24, 1997, when his hand was crushed by an automotive lift sometimes referred to as a "frame machine." Plaintiff asserts that the machine descended faster than applicable industry standards trapping Plaintiff and resulting in injury. The question before the Court is

whether Defendant will be allowed to present testimony from Plaintiff's treating physician which could have a devastating effect upon Plaintiff's case. Regardless of the near fatal quality of the testimony, Defendant is entitled to present such evidence. Since Plaintiff's treating physician possesses factual information which was obtained during the course of treatment and not as a result of a consulting expert relationship, there is no prohibition on the doctor's testifying at trial.

Plaintiff finds himself in the unusual posture of attempting to silence his own physician. Stephen Gunther, M.D., is the subject of Plaintiff's Motion in Limine. Dr. Gunther was not listed as one of the witnesses in the Pretrial Order prepared by the parties. Defendant seeks leave of Court to call Dr. Gunther as a fact witness.

While not terribly unheard of, this tale comes with an interesting twist. Plaintiff was treated by Dr. Gunther on two occasions. The treatment records were timely provided to Defendant during discovery. However, in the course of conducting its litigation due diligence, Defendant's counsel did not rely solely upon the records provided by Plaintiff, but subpoenaed the complete treatment records of Dr. Gunther. Surprisingly, Defendant learned there was a third visit to Dr. Gunther on March 30, 1998. It is the substance of this third visit that provides the procedural and evidentiary drama.

There is no dispute that Defendant propounded reasonable discovery requests which would have required the timely production of the March 30, 1998 record, if known to exist by Plaintiff. On or before November 26, 1999, Defendant's experts designation was due pursuant to the Court's Scheduling Order. On March 27, 2000, the original Pretrial Conference was to be held. Dr. Gunther was not listed as a witness by either party. For unrelated reasons, the Pre-trial Conference was postponed. On July 6, 2000,

Defendant learned of Plaintiff's third visit and promptly sought to amend the Pre-trial Order to list Dr. Gunther as a witness. The trial was not scheduled to occur until October 2000.[1]

During the period of discovery, the parties were not aware of the medical record for the March 30, 1998 visit. Neither Plaintiff nor Defendant could produce what they did not possess. As Plaintiff cannot be blamed for non-production of unknown materials held by his former treating physician, Defendant cannot be blamed for late production of the medical record and the need to call Dr. Gunther as a witness.[2]

Plaintiff's counsel contends that the now infamous March 30, 1998 visit, was not for the purpose of medical treatment, but solely for the purpose of discovering Dr. Gunther's opinions with respect to Plaintiff's case. While Plaintiff's counsel was in attendance at the March visit, no formal agreement with Dr. Gunther was contemplated regarding his testimony. No payments for consultation services were rendered. The end result was an examination very similar to previous examinations.

Plaintiff posits several reasons why Dr. Gunther should not be allowed to testify. First, Plaintiff suggests that Defendant should have satisfied the mandatory disclosure requirements for expert testimony under Fed.R.Civ.P. 26(a)(2). Second, Plaintiff attempts to paint Dr. Gunther's March 30, 1998 examination with the brush of a "consulting expert" in accordance with the Federal Rules which state,

A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at the trial, only as provided in Rule 35(b) or upon a showing

---

1. In the interim, this case was referred to the undersigned by consent of the parties, and a Pretrial Conference was held on September 19, 2000. The Court gave Plaintiff the option of having a new trial date which he agreed to. The matter is now scheduled for trial beginning November 14, 2000.

2. Plaintiff's counsel has directed outrage toward Defendant since Dr. Gunther ignored Defendant's October 1999 subpoena, and Defendant failed to seek the Court's assistance to require timely compliance. Such a decision is properly reserved to the counsel issuing the subpoena, and Plaintiff should not be heard to cry foul.

of exceptional circumstances under which it is impracticable for the parties seeking discovery to obtain facts or opinions on the same subject by other means.

Fed.R.Civ.P. 26(b)(4). If treated as a "consulting expert" by the Court, the discovery of opinions held by such an expert can only occur after a "showing of exceptional circumstances." Third, Plaintiff suggests that allowing leave for Defendant to call Dr. Gunther as a trial witness at this stage of the proceedings would be fundamentally unfair.[3] Defendant claims that if the March 30, 1998 report had been produced in a timely fashion and prior to the "submission of the Pretrial Order, Defendant would have named Dr. Gunther to testify regarding his belief that Plaintiff did not sustain a genuine injury as a result of the alleged occurrence."

### I Dr. Gunther's Testimony Is Not Precluded By The Rules of Evidence.

Federal Rule of Civil Procedure 26 generally deals with the discovery of expert opinions. The Federal Rules of Evidence govern questions of admissibility once such opinions are known. Federal Rule of Evidence 403 grants the Court the authority to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury." Even though in this instance the expert's opinion is known, a review of the rules of discovery is helpful in determining whether allowing the use of said evidence at trial would result in "unfair prejudice."

### A. The Mandatory Disclosure Requirements Do Not Apply To Dr. Gunther's Factual Testimony.

■ At first blush, one would expect the professional opinions of a physician to be governed by the rules regarding expert disclosures. Legal commentators have dissected the Federal Rules regarding expert disclosures into four categories: (1) experts a party expects to use at trial; (2) experts retained or specially employed in anticipation of litigation, but not expected to be used at trial; (3) experts informally consulted in preparation for trial but not retained; and, (4) experts whose information was not acquired in preparation for trial. *See 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure:* Civil 2d § 2029 ("Wright & Miller").

One approach would analyze the admissibility of Dr. Gunther's "expert" testimony as a witness for Defendant. Under this approach, Plaintiff argues that since Defendant failed to make a timely disclosure in accordance with the Court's Scheduling Order, Dr. Gunther's "expert" testimony should be barred. The facts of this case however, are a bit unusual. In the typical course of events, Defendant's counsel would hire his own expert within the deadlines established by the Court. Dr. Gunther, however, does not come to this exercise as the typical expert witness hired for such purpose. Nonetheless, if Dr. Gunther is expected to offer pure "expert" testimony, and no factual testimony, then such testimony is excluded. The Scheduling Order is designed to regulate the orderly development and production of this sort of pure opinion type testimony.

The other categories of the Wright & Miller paradigm are clearly inapplicable. There is no evidence that Defendant's counsel "retained" or "informally consulted" with Dr. Gunther at any time prior to the filing of the motion in limine. Under the fourth category, the "factual" information obtained from such an expert would never be excluded at trial. This "factual" component will be discussed in Section II below.

In summary, applying the Wright & Miller formula on the condition of Dr. Gunther being a defense witness, results in all pure opinion testimony being excluded. Dr. Gunther's factual testimony under this analysis is admissible.

### B. Dr. Gunther Is Not A "Consulting Expert."

The alternative approach of viewing Dr. Gunther as Plaintiff's "consulting expert" is

---

**3.** Dr. Gunther's production of his March 30, 1998 examination record comes as a great surprise to both parties. Plaintiff's counsel was astonished to learn that this third visitation was found as an entry in Plaintiff's treatment records.

Plaintiff strongly urges the Court to apply the deadlines of the Scheduling Order strictly, for to do otherwise would frustrate Plaintiff's litigation strategy.

unavailing to Plaintiff. Admittedly, Courts are concerned about such expert's disclosing confidential information and will shield from discovery interactions between counsel and expert witnesses in the absence of a "showing of exceptional circumstances." Fed. R.Civ.P. 26(b)(4). In the instant case, there is no confidential information of concern.

■ Under Wright & Miller's second category, Dr. Gunther was never "retained or specially employed" by Plaintiff. There was never an agreement reached with Dr. Gunther regarding his expected testimony nor any payment for services rendered. The only people who had any idea that Dr. Gunther was expected to be a "retained" expert were Plaintiff's attorneys.

■ Under the third category, there is no indication that Dr. Gunther was "informally consulted" to the extent that Plaintiff should have the power to prevent his testifying. In reviewing the problem, the courts have developed four factors to consider: (1) the manner in which the consultation was initiated; (2) the nature, type and extent of information or material provided to, or determined by the expert in connection with his review; (3) the duration and intensity of the consultative relationship; and, (4) the terms of the consultation, if any, such as payment, confidentiality of test data or opinions, etc. *Healy v. Counts*, 100 F.R.D. 493 (D.Col.1984); *Ager v. Jane C. Stormont Hospital & Training School for Nurses*, 622 F.2d 496 (10th Cir. 1980).

■ While the Court accepts counsel's representation that the March 20, 1998 meeting, was solely for the purpose of discerning Dr. Gunther's stance with respect to opinions to be offered, this does not, in and of itself, change the character of Dr. Gunther's examination into an informal consultation. This was a one-time visit with no arrangements for payment, confidentiality, or any of the other indicia of a relationship with a consulting expert. Accordingly, the Court does not find that Dr. Gunther was an informally consulted expert. As stated in *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F.Supp. 1246 (E.D.Va.1991) "a lawyer seeking to retain an expert and establish a confidential relation-

ship should make this intention unmistakably clear and should confirm it in writing." While a writing is not required, it goes a long way in eliminating the sort of problems found here.

*C. Fairness Requires Allowing Defendant To Call Dr. Gunther As A Trial Witness*

■ The parties have followed the Court's Scheduling Order in all important respects. Nonetheless, like most cases that are litigated, something arises which cannot be resolved within the prepackaged format designed for the typical case. It is for this reason that courts are receptive to modification upon a showing of "good cause." The courts should not elevate form over substance. The problem is not one of discovery, but of the admissibility of information already known. Defendant should not be penalized at trial because relevant, admissible evidence becomes known after the discovery deadline passes, but long before the trial date. On these facts, fairness requires allowing Defendant to use said evidence.

Accordingly, Dr. Gunther's pure opinion testimony is precluded by the Federal Rules of Evidence. However, Defendant's use of his factual testimony is allowed since it will not result in unfair prejudice to Plaintiff.

**II As A Fact Witness, The Treating Physician's Testimony Is Admissible Irrespective Of The Rule Regarding Expert Disclosures**

That a treating physician should be considered principally a fact witness is not a novel idea. In the often cited and well reasoned opinion of *Sullivan v. Glock, Inc.*, 175 F.R.D. 497 (D.Md.1997), the Court reviewed the often confusing discovery obligations that a party encounters when trying to characterize the expected testimony of a treating physician. Simply put, a treating physician is "a hybrid witness for whom no Rule 26(a)(2)(B) disclosures are required." As such, a treating physician can be a fact witness for some purposes and a retained or consulting expert witness for other purposes.

In order to determine which opinions are admissible as "fact opinions," the parties and

the Court must examine the nature of the testimony expected to be offered at trial. The "fact opinions" of a treating physician's testimony include not only his or her simplistic observations—such as a person's gait, the presence of swelling or that a body part is warm to the touch—but also notions regarding causation, diagnosis, prognosis, and the extent of the disability or injury. Conversely, if the physician's opinion is based on information not learned during the course of treatment, then such testimony usually is beyond the "fact opinion" classification and must comply with the rules regarding expert disclosures. The delineation of treating physicians as fact witnesses for these purposes has been similarly treated in other jurisdictions. *See Quarantillo v. Consolidated Rail Corp.*, 106 F.R.D. 435 (W.D.N.Y.1985); *Baker v. Taco Bell, Corp.*, 163 F.R.D. 348 (D.Col. 1995).

A review of Dr. Gunther's medical report leads to the conclusion that his testimony will be factual in nature. As a fact witness, no basis exists for the exclusion of his testimony.

While the parties have engaged in an exercise of mental badminton, this scenario is not uncommon. There are a host of occasions where the initial treating physician has reached conclusions completely adverse to the position to be taken by eventual plaintiffs. In those instances, plaintiffs may be driven by legitimate interests to seek treatment by a different physician. Nonetheless, once discovery proceeds, plaintiffs may have an obligation to disclose the treatment history of all physicians, even though plaintiffs may have a preference for one over another. Such concerns cannot shield from discovery the treatment provided by an unfavored physician.

Plaintiff understandably seeks to silence the doctor. However, the mouth of a factual witness cannot be muzzled merely because the expected testimony will be adverse to either party. Treating physicians are no different.

The Court finds "good cause" for the modification of the Scheduling Order to allow Defendant to list and call Dr. Gunther as a fact witness. The Court finds no bad faith by Defendant's counsel, and that he acted diligently. The Court finds that Plaintiff has suffered no unfair prejudice. *See Potomac Electric Power v. Electric Motor Supply,* 190 F.R.D. 372 (D.Md.1999).

In conclusion, the party seeking non-disclosure of a treating physician's factual testimony has the burden of clearly establishing that such testimony flows from the physician's status as a consulting expert in order to prevent such disclosure. Such is not the case at present. Defendant is free to use at trial factual information learned from Plaintiff's physician.

