NANCY LEFKOWITZ, Appellant, v NASSAU COUNTY MEDICAL CENTER et al., Respondents.

Second Department, May 31, 1983

APPEARANCES OF COUNSEL

*Pegalis & Washsman* (*Steven E. Pegalis* of counsel), for appellant.

*Edward G. McCabe, County Attorney* (*Robert O. Boyhan* of counsel), for Nassau County Medical Center and another, respondents.

OPINION OF THE COURT

*Per Curiam.*

In this medical malpractice action the plaintiff claims to have lost her fertility as a result of the defendants' negligence. Contesting the claim, the defendants seek to examine the plaintiff by use of a hysterosalpingogram, a fertility

test involving X-ray examination of the uterus and fallopian tubes after injection of a radiated opaque medium. Special Term has granted the defendants' application to require plaintiff to submit to the test. There should be a reversal.

Plaintiff commenced this action against the Nassau County Medical Center, Dr. Romeo Perez and Dr. Richard Koeppel, alleging that their negligent treatment of her gynecological problems caused the spread of pelvic inflammatory disease. A primary issue in the case is whether the plaintiff's alleged inability to conceive is a consequence of the defendants' treatment, even though her right ovary and fallopian tube were surgically removed after she left the defendants' care. The defendants Nassau County Medical Center and Dr. Perez (the county defendants) moved for an order compelling plaintiff to submit to a physical examination including the hysterosalpingogram and the motion was joined in by defendant Dr. Koeppel. In his supporting affirmation, the attorney for the county defendants alleged that the test would establish the ability to conceive if the opaque material passed through plaintiff's remaining fallopian tube. He also affirmed to the court that the test "is in no way life threatening or a test which poses a threat to one's health."

Plaintiff cross-moved for a protective order, arguing that the test presents some danger to her health since the use of radiated material might cause a severe reaction, including a flare-up of her pelvic infection. Although she submitted no medical affidavit from any physician, plaintiff's attorney cited a portion of the 1979-1980 Physicians' Desk Reference (p 82), which declares that "[a] major disadvantage common to all of the iodinated contrast media has been the variable and unpredictable occurrence of reactions. These reactions may vary from minor problems of little or no consequences to severe life threatening symptoms which may rarely result in death." The attorney's affirmation also made a reference to Novak, Textbook of Gynecology (p 637), which asserts: "Because of the high amount of radiation to the ovaries which this procedure may entail, it should be limited to carefully selected cases." In rebuttal, the attorney for the county defendants claimed

that the textual references "merely stand for the proposition that in a very rare case there can be some minor complication involved in doing a hysterosalpingogram." Special Term granted defendants' application, directed plaintiff to submit to the hysterosalpingogram, and denied plaintiff's cross motion for a protective order. The court stated that "[o]ne of the primary issues in this case is whether the plaintiff is fertile, therefore necessitating the subject test."

At that point, plaintiff moved to renew her cross motion for a protective order, arguing that renewal should be granted since she had been unable to obtain a physician's affidavit during the 15-day period between the county defendants' motion and its return date. On renewal the plaintiff submitted an affidavit from Dr. Marvin Fogel, board certified gynecologist and obstetrician, in which he concluded that upon reviewing plaintiff's medical records, "there is a significant risk to this patient in performing a hysterosalpingogram since such a procedure could result in a flare-up of a subclinical abscess, resulting in a tuboovarian abscess which would compromise the remaining side and would result in castration of the remaining ovary." Fogel averred that while the test is definitive if it shows blockage (i.e., a failure of the medium to pass through plaintiff's fallopian tube), it would not be conclusive in the absence of blockage, since infertility could result from other causes not related to blockage.

In opposition, the county defendants argued that the absence of a medical affidavit on the original cross motion was fatal because two weeks was sufficient time for plaintiff to have obtained such an affidavit. As to the merits, counsel claimed that a physician administering the hysterosalpingogram would check plaintiff for any infections and if any infections were found the test would not be performed. Special Term denied the motion to renew, stating that "the new facts presented do not warrant the relief sought."

We believe that renewal should have been granted since the plaintiff offered a valid excuse for not submitting the physician's affidavit upon her original cross motion (see *Foley v Roche,* 68 AD2d 558, 565; Siegel, Practice Com-

mentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2221:9, p 161). We thus consider the entire record, including the new material submitted on renewal.

Although plaintiff placed her physical condition in controversy when she commenced this lawsuit (see *Koump v Smith,* 25 NY2d 287), an examination should not be required if it presents the possibility of danger to her life or health (see *Carrig v Oakes,* 259 App Div 138, mot for lv to app den 259 App Div 798; *Bartolotta v Delco Appliance Corp.,* 254 App Div 809; *Grill v Mathieson Alkali Works,* 243 App Div 853; *Esposito v New York Hosp.,* 114 Misc 2d 756; *Adlerstein v South Nassau Communities Hosp.,* 109 Misc 2d 158; 3A Weinstein-Korn-Miller, NY Civ Prac, par 3121.06; Ann., 135 ALR 883). While the instant test is not always dispositive, it is of some value, and the only issue to be determined is its safety (see *Linden v Shore,* 49 AD2d 865; *Carpinelli v Manhattan Bottling Corp.,* 21 AD2d 792).

We conclude that the evidence submitted in support of plaintiff's motion to renew met the burden of showing that the proposed test is prima facie potentially dangerous (cf. *Linden v Shore, supra; Esposito v New York Hosp., supra*). Once such a showing is made the burden shifts to the party seeking the test to demonstrate its safety. Although the degree and type of proof necessary to show safety may vary from case to case, the seeking party generally is required to offer the affidavit of an expert or at least to cite from standard medical texts of which judicial notice could be taken (see 3A Weinstein-Korn-Miller, NY Civ Prac, par 3121.06). The court should be presented with proof "showing the necessity for such examination, the details of the procedure employed in making it, the frequency with which it has been done, together with the experience and observations which have been made by physicians as to pain, harm, or after results of any nature, occurring to persons so examined" (*Cardinal v University of Rochester,* 271 App Div 1048).

Defendants failed to meet their burden since they did not furnish proof in proper form demonstrating that the test would not be harmful. The conclusory statements of the county defendants' counsel are valueless because of his lack of qualification to render a medical opinion. In the

absence of medical affidavits or citations to medical tests refuting the plaintiff's showing, there is no basis for judicial notice that the test is without danger to the plaintiff (see *Grill v Mathieson Alkali Works,* 243 App Div 853, *supra*). The safety of a hysterosalpingogram is not a well-settled proposition, and it is not one of the conventionally accepted methods of physical examination utilized in tort actions. Since the test *may* endanger plaintiff's health, we will not mandate its performance. Accordingly, there should be a reversal and the grant of plaintiff's cross motion for a protective order.

MOLLEN, P. J., LAZER, THOMPSON and GULOTTA, JJ., concur.

Order of the Supreme Court, Nassau County, dated April 16, 1982, reversed, motion to renew granted and upon renewal, order dated December 23, 1981 vacated, defendants' application denied and plaintiff's cross motion for a protective order granted.

Appeal from the order dated December 23, 1981 dismissed.

Plaintiff is awarded one bill of costs payable jointly by defendants.