2002 OK 101

**David Ray ST. CLAIR, Sr., and Paula St. Clair, husband and wife; et al., Plaintiffs/Petitioners,**

v.

**The Honorable Farrell M. HATCH, Respondent.**

No. 97,899.

Supreme Court of Oklahoma.

Dec. 17, 2002.

Robert A. Nance, Tulsa, OK, for Plaintiffs/Petitioners.

Malinda S. Matlock, Haven Tobias, Oklahoma City, OK, for Real Party in Interest Defendant Jorge A. Saborio, M.D.

John R. Paul, Leah McCaslin Kinsey, Tulsa, OK, for Real Party in Interest Defendant Durant H.M.A., Inc. d/b/a Medical Center of Southeastern Oklahoma.

BOUDREAU, Justice.

¶1 We assume original jurisdiction over these discovery disputes to decide an issue of first impression: What factors must the trial court consider when determining whether to order a party to undergo a medical examination which the party to be examined deems unsafe?

## I. FACTS

¶2 Plaintiffs sued Dr. Jorge A. Saborio (Dr. Saborio) and Durant H.M.A., Inc. d/b/a Medical Center of Southeastern Oklahoma (Medical Center) for medical malpractice arising out of laser ablation surgery performed on plaintiff, David Ray St. Clair, Sr. (St.Clair), by Dr. Saborio on July 21, 1994, during a cystoscopic examination. Dr. Saborio now seeks an order requiring St. Clair to submit to another cystoscopic examination, which involves inserting a thin flexible tube equipped with lights and a camera into the end of St. Clair's penis to visualize the urethra and other structures within the urinary tract.[1] The procedure would also include a urodynamic study and urethral pressure study, which involve introducing fluid to see how the structures of the urinary tract handle that fluid.[2] According to Dr. Saborio,

---

1. This would be St. Clair's third cystoscopic examination. The first was performed by Dr. Saborio on July 21, 1994 and included not only a visual examination but also laser ablation surgery. The July 21, 1994, surgery is the basis of this lawsuit. The second cystoscopic examination was performed by St. Clair's treating physi-cian, Dr. Hilz, in 1998 and was a visual examination only.

2. Defendants' Notice for Independent Exam lists the following: History and Physical Exam in anticipation of the cystoscopic and urodynamic

these studies would measure the injuries St. Clair alleges in this case.

## II. RELEVANT LAW—12
## O.S. § 3235(A) & (B)

¶ 3 Title 12, Section 3235 of the Oklahoma Statutes sets forth the procedures for obtaining, through discovery, physical and mental examinations of parties and persons in custody of or under the legal control of parties.[3] The procedures differ depending on whether the physical condition of the party to be examined is, or is not, an element of that party's claim or defense. Subsections (A) and (B) govern when the party's physical condition *is* an element of that party's claim or defense. Subsection (C) governs when the party's physical condition *is not* an element of that party's claim or defense.[4]

¶ 4 Under Subsections (A) and (B), applicable when a party's physical condition is in controversy and is relied upon as an element of that party's claim or defense, an adverse party "may take" a physical examination of the party. 12 O.S. § 3235(A). The adverse party must serve its request for the examination upon the party to be examined and all other parties, specifying the time, place, manner, conditions and scope of the examination as well as the name of the person who will perform the examination. 12 O.S. § 3235(B). No such request shall be served until thirty days after service of summons and petition upon the defendant. *Id.* The request shall set a time for the examination at least five days after service of the notice. *Id.* If the party to be examined

objects, he/she may either file a motion objecting to the examination or apply for a protective order. *Id.* In either event, the burden of proof is on the objecting party. *Id.* A representative of the party to be examined may be present at the examination. 12 O.S. § 3235(D). The representative may be the party's physician, attorney or some other person. *McCullough v. Mathews,* 1995 OK 90, 918 P.2d 25.

¶ 5 When the party to be examined is relying upon a condition that is an element of that party's claim or defense, § 3235 favors the interests of the party seeking the examination to fully investigate and prepare its case. In such a situation the statute allows the adverse party to request a physical examination of another party without obtaining a court order.[5]

¶ 6 If the party to be examined objects to the request for examination, he/she must file a motion setting forth any objections or file a motion for protective order. When the basis for the objection is that the proposed examination is unsafe, the objecting party has the initial burden of presenting evidence that the examination is potentially dangerous. Although the degree and type of proof may vary, at a minimum the objecting party must produce specific evidence of potential harm. Normally, the evidence will be produced through the affidavit of an expert and/or citations from recognized medical texts. Mere conclusory statements are not sufficient. If the objecting party fails to

---

studies, and (a) Complete CMG Code 51726, (b) Voiding pressure study Code 51795, (c) Intraabdominal pressure study Code 51797, (d) EMG Code 51784, (e) Complex uro-flow residual Code 51741, (f) Urethral pressure profile Code 51722, (g) Cystoscopy with calibration Code 52281.

3. Section 3235 governs both physical and mental examinations and uses the inclusive phrase "the physical, including the blood group, or mental" condition. For simplification purposes only, in this opinion we will use the shorthand "physical" condition and "physical" examination. Section 3235 also uses the inclusive phrase "parties and persons in custody of or under the legal control of parties." For simplification purposes only, in this opinion we will use the shorthand "party."

4. Our statutory distinction between whether the party's physical condition is, or is not, an element of the party's claim or defense appears to be unique. No other state appears to make this distinction. Most states have enacted, in their respective discovery codes, language virtually identical to that of Rule 35(a) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 35(a) allows the court to issue an order directing a party or person in the custody or under the control of a party to submit to a physical or mental examination upon a showing of good cause. Our Subsection 3235(C) is virtually identical to Fed.R.Civ.P. 35(a).

5. This is unlike Fed.R.Civ.P. 35(a) and our § 3235(C), which both require the party seeking the examination to obtain a court order.

meet this initial evidentiary burden, the trial court shall order the examination.

¶ 7 Once the objecting party meets this initial evidentiary burden, the burden of going forward with the evidence shifts to the party seeking the examination to present evidence that the examination is necessary and relatively safe. Again, mere conclusory statements are not sufficient. In demonstrating necessity, the party seeking the examination may present evidence that the requested examination will produce relevant evidence that is not available from other sources, the existing medical evidence is inadequate to fully evaluate the physical condition or the information garnered from the examination is not available through less intrusive methods. *See, e.g., Ex parte Wal-Mart Stores, Inc.,* 729 So.2d 294 (Ala.1999). In demonstrating safety, the party seeking the examination may present evidence that the examination poses a minimal risk to the life or health of the party to be examined.[6] If the party requesting the examination fails to present adequate evidence of the necessity and safety of the proposed examination, the trial court shall order that the examination not take place.

¶ 8 Upon the submission of all the evidence, the trial court must conduct a risk-benefit analysis to determine whether the requested examination is dangerous and, if so, whether the risk to the party being examined outweighs the expected benefit to be derived from the examination.[7] The standard is a flexible one and each case must be judged on its own unique circumstances. Although the burden of presenting evidence shifts as described above, the burden of persuasion remains at all times on the party objecting to the examination to demonstrate by the preponderance of the evidence that the risk to the party to be examined outweighs the benefit to be derived from the examination.

¶ 9 An evidentiary hearing is not required in all cases. *Schlagenhauf v. Holder,* 379 U.S. 104, 119, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). A hearing may be needed in some cases, but in other cases the showings could be made by affidavits or other usual methods short of a hearing. *Id.* In any event, however, the parties must produce sufficient information so that the trial court can fulfill its function to decide the issue. *Id.*

¶ 10 After considering the evidence and conducting a risk-benefit analysis, the trial court, exercising its discretion, may order the examination to take place under such terms and conditions it finds are warranted under the facts of the case, or it may order that the examination not take place.

### III. APPLICATION OF THE LAW TO THIS CASE

¶ 11 In this case there are competing and contradictory affidavits. Dr. Hilz, a board certified urologist who has treated St. Clair for approximately thirteen years, submitted an affidavit on behalf of St. Clair. Dr. Hilz describes the proposed cystoscopic examination as an invasive surgical procedure requiring either general or local anesthetic and states that for several days after the examination it is not uncommon for the patient to see blood in his urine and to experience a stinging sensation when urinating. Dr. Hilz identifies the risks associated with cystoscopic examination to include puncture, infection and further injury-including life-threatening complications associated with infection and/or sedation.

---

6. Other courts have used the word "minimal" when describing the acceptable level of risk to the party being examined. *See, e.g., Pena v. Troup,* 163 F.R.D. 352 (D.Colo.1995); *West Virginia ex rel. Letts v. Zakaib,* 189 W.Va. 616, 433 S.E.2d 554 (1993); *Stasiak v. Illinois Valley Community Hosp.,* 226 Ill.App.3d 1075, 169 Ill. Dec. 55, 590 N.E.2d 974 (1992).

7. The seminal and most cited cases adopting the burden shifting and risk-benefit analysis are *Lefkowitz v. Nassau County Medical Center,* 94 A.D.2d 18, 462 N.Y.S.2d 903 (1983) and *Sarka v. Rush Presbyterian–St. Luke's,* 207 Ill.App.3d 587, 152 Ill.Dec. 614, 566 N.E.2d 301 (1990). In both decisions, the applicable law is similar to Fed. R.Civ.P. 35(a). While we adopt the burden shifting and risk-benefit analysis from other jurisdictions, § 3235(B) requires that, unlike those other jurisdictions, we place the burden of proof on the party to be examined, not on the party seeking the examination.

¶ 12 He also asserts that another cystoscopic examination is simply unnecessary. Dr. Hilz states that within one year after the surgery which St. Clair alleges Dr. Saborio negligently performed, and prior to any litigation being filed in this case, Dr. Hilz performed a cystoscopic examination and urodynamic study of St. Clair solely for medical reasons. Dr. Hilz performed the cystoscopic examination on March 22, 1995; he performed the urodynamic study on April 18, 1995. Dr. Hilz states that the medical records from these two procedures have been labeled by the parties (together with other medical records) as joint exhibits in the case.

¶ 13 Dr. Charles A. McWilliams, III, a board certified urologist, submitted an affidavit on behalf of Dr. Saborio. Dr. McWilliams states he has never met St. Clair, does not have a physician-patient relationship with him, and was asked to render an opinion as to whether Dr. Saborio negligently caused any injury to St. Clair as a result of the urological procedures performed by Dr. Saborio in July of 1994. Dr. McWilliams states that a diagnostic cystoscopy is a minimally invasive procedure that is not life threatening and can be done under local anesthetic, patient cooperating. Dr. McWilliams adds that although a diagnostic cystoscopic examination carries a theoretical risk of puncture and life-threatening infection, in more than twenty years he has never experienced bladder urethral puncture with any of his patients and has never heard of such injury being caused by any personal colleague or partner during the procedure. Moreover, Dr. McWilliams continues, routine pre-procedure oral antibiotics have consistently and reliably prevented serious subsequent urinary tract infection.

¶ 14 Dr. McWilliams states that urinary incontinence is a recognized complication of the laser ablation surgery performed by Dr. Saborio in 1994 and can occur in the absence of negligence. Dr. McWilliams adds that he needs to personally perform a cystoscopy and urodynamic study on St. Clair because the type of injury described by Dr. Hilz during his 1995 cystoscopic examination can be subtle and difficult to visualize, and the appearance of such an injury can be potentially created by the urologist's technique either intentionally or inadvertently. Dr. McWilliams states that he cannot form an opinion as to whether St. Clair's incontinence is the result of negligent technique on the part of Dr. Saborio unless he personally performs both the cystoscopy and urodynamic study. Finally, Dr. McWilliams states that watching a video of Dr. Hilz performing the procedures would be of little help and would not provide conclusive information to him.

¶ 15 We conclude that the factual disputes relating to both the need and relative safety of the proposed examination cannot be resolved by the competing affidavits in this case. Because the doctors' affidavits are contradictory and conflicting, the trial court must conduct a hearing in this case. Accordingly, we grant petitioners' application for a writ of prohibition. We prohibit the respondent judge from enforcing his June 24, 2002 order, direct him to vacate his June 24, 2002, order and direct him to conduct an evidentiary hearing consistent with today's pronouncement.

## IV.   OTHER DISCOVERY ISSUES

¶ 16 Petitioners also seek a writ of mandamus commanding the respondent judge to rule on their motion to compel, which they filed September 27, 2001, and to articulate his March 20, 2002, discovery ruling "in a manner that will guide the parties in conducting discovery." We have carefully reviewed the materials submitted by the parties and we address each of these issues separately. We emphasize, however, that we are not, in this opinion, addressing the merits of any of the orders which the respondent judge has entered in this case.

### A.   Petitioners' Motion to Compel, Filed September 27, 2001

¶ 17 Petitioners state that the respondent judge has not yet ruled on their motion to compel, filed September 21, 2001. In response, defendants argue that the respondent judge has ruled, although implicitly. According to defendants, there were two motions pending in March of 2002—the Medical Center's April 30, 2001, motion for protective order and the petitioners' September

27, 2001, motion to compel. Defendants state that these two motions addressed the same issues. Since they addressed the same issues, defendants contend, the respondent judge's March 20, 2002, minute order which sustained the Medical Center's motion for protective order necessarily also overruled petitioners' motion to compel. We disagree. The two motions do not address the same issues. Accordingly, we order the responding judge to rule on petitioners' September 27, 2001, motion to compel, and to include sufficient specificity within his ruling to guide the parties in discovery.

### B. Order Dated March 20, 2002.

¶ 18 Finally, petitioners seek an order directing the respondent judge to articulate his March 20, 2002, discovery ruling "in a manner that will guide the parties in conducting discovery." On March 20, 2002, the respondent prepared a minute order which reads, in full:

Def Saborio & Def Durant HMA Inc motion for protective order is sustained. Evidence of events occurring after July 21, 94 are not relevant to the case.

On May 10, 2002, during a hearing on another matter, the respondent judge orally clarified the minute order as follows:

Well, what I said or meant to say that any evidence of Saborio's drinking habit, after July 21, '94, is not relevant. Any evidence of his drinking habit before that date may be relevant as it—if it has to do with the time of the operation.

The minute order, supplemented by the judge's remarks at the hearing, is not sufficient to guide the parties in discovery. We direct the respondent judge to reduce his March 20, 2002, discovery ruling to writing in conformance with 12 O.S. § 696.3.[8]

### V. CONCLUSION

¶ 19 We assume original jurisdiction over these discovery disputes to decide what factors a trial court must consider when determining whether to order a party to undergo a medical examination which the party to be examined deems unsafe. Having reviewed the materials submitted by the parties in light of these factors, we conclude the factual disputes relating to both the need and relative safety of the proposed cystoscopic examination, urodynamic study and urethral pressure study cannot be resolved by the competing affidavits in this case. We therefore grant petitioners' application for a writ of prohibition. We prohibit the respondent judge from enforcing his June 24, 2002 order, direct him to vacate his June 24, 2002, order and direct him to conduct an evidentiary hearing consistent with today's pronouncement.

¶ 20 We grant petitioners' application for a writ of mandamus. We direct the respondent judge to rule on petitioners' September 27, 2001, motion to compel, with sufficient specificity to guide the parties in discovery, and to reduce the March 20, 2002, discovery ruling to writing in conformance with 12 O.S. § 696.3.

**ORIGINAL JURISDICTION ASSUMED; APPLICATION FOR WRIT OF PROHIBITION GRANTED; APPLICATION FOR WRIT OF MANDAMUS GRANTED.**

Concurring: HARGRAVE, C.J., WATT, V.C.J., LAVENDER, KAUGER, BOUDREAU, JJ.

Concurring in part, dissenting in part: OPALA, J.

Dissenting: WINCHESTER, J. I dissent. I would deny original jurisdiction on this discovery issue and allow the trial court judge to deal with the attorneys and issues.

Not Participating: HODGES, SUMMERS, JJ.

---

**8.** Although § 696.3 literally applies only to judgments, decrees and appealable orders, we reference § 696.3 because the Oklahoma Supreme

Court Rules governing original jurisdiction proceedings contemplate a written order from the trial court. *See* Okla.Sup.Ct.R. 1.191(d)(1)(b).