2007 OK 15

**Margie L. HOLMES, Administrator of the Estate of Teresa Lee Elam, Petitioner,**

v.

**Honorable Rebecca Brett NIGHTINGALE, District Judge, Respondent.**

No. 103,762.

Supreme Court of Oklahoma.

March 20, 2007.

As Corrected May 30, 2007.

**1040**

Steven R. Hickman, Frasier, Frasier & Hickman, LLP, Tulsa, OK, for Petitioner.

Karen L. Callahan, Leslie C. Weeks, Beth S. Reynolds, Rodolf & Todd, Tulsa, OK, for Real Party in Interest, St. John Medical Center, Inc.

Jeffrey A. Glendening, James A. Higgins, Tara P. Goodnight, The Glendening Law Firm, P.L.L.C., Tulsa, OK, for Real Party in Interest, Interim Healthcare of Tulsa, Inc.

WATT, J.

¶ 1 We assume original jurisdiction to decide an issue not addressed in a published opinion [1] since the enactment in. 1996 of the Health Insurance Portability and Accountability Act (HIPAA),[2] 42 U.S.C. § 1320d, *et. seq.*[3] The initial issue presented is whether,

---

1. In an unpublished order, filed on February 27, 2006, we determined that disclosure of protected health care information pursuant to court order was permissible under HIPAA. The order in # 102,964 *Huffman v. Honorable Ronald Shaffer,* provides in pertinent part:

"... An order requiring the real party in interest to execute an authorization for the release or disclosure of medical 'information'—oral or written—would not contravene *Seaberg,* so long as voluntary, informal *ex parte* communication is merely allowed, not compelled or required. Entities or health care providers subject to the restrictions of HIPAA may avert violation of the Act by limiting statements, responses, or other forms of disclosure to individually identifiable health information encompassed within the § 19(B) waiver...."

The vote on the unpublished order appears as: Watt, C.J., Winchester, V.C.J., Lavender, Hargrave, Kauger, Edmondson, Taylor, Colbert, JJ., concur. Opala, J., concurs in result.

2. Although we have chosen to refer to the act in its shorthand from as "HIPAA," we note that legal research reveals that the Act has been referred to by other courts as "HIPPA" and "HIPA" and that, in common parlance, the most prevalent reference appears to be to "HIPPA"— especially in the examination of patient rights' forms which also reveal the same inconsistencies.

3. Interim appears to argue that original jurisdiction should be assumed only when an abuse of discretion has occurred requiring this Court's

when an individual has clearly placed mental or physical conditions in issue by filing suit,[4] a court order allowing, but not mandating, oral communications with health care providers violates HIPAA's confidentiality provisions.

¶2 We hold that a court order permitting, rather than mandating, oral communication with health care providers entered as a result of an individual clearly placing mental or physical conditions in issue by filing suit does not contravene HIPAA's confidentiality requirements. Our determination is supported by: 1) 45 CF.R. § 164.512(e)(1) governing

the procedural requirements and safeguards imposed by HIPAA which clearly anticipates disclosures of protected health information pursuant to a court order;[5] 2) extant federal jurisprudence;[6] and 3) this Court's pre-HIPAA decisions in *Johnson v. District Court of Oklahoma County*, 1987 OK 47, 738 P.2d 151 and *Seaberg v. Lockard*, 1990 OK 40, 800 P.2d 230 recognizing that where there has been a waiver of the physician/patient privilege pursuant to § 19(B)(1) of title 76,[7] judicial authority may not be utilized to facilitate or impede *ex parte* communications with the plaintiff's health care providers.

intervention through issuance of a writ. The assertion is not consistent with our jurisprudence. *Ward Petroleum Corp. v. Stewart*, 2003 OK 11, 64 P.3d 1113 [Petition for certiorari recast as petition for writ of prohibition; original jurisdiction assumed; writ denied.]; *Grimes v. City of Oklahoma City*, 2002 OK 47, 49 P.3d 719 [Original jurisdiction assumed; declaratory relief denied; writs of mandamus and prohibition denied.]; *World Pub. Co. v. Miller*, 2001 OK 49, 32 P.3d 829 [Writ denied.]. Furthermore, we may assume original jurisdiction to address issues in discovery matters which are primarily those of first impression. *Heffron v. District Court of Oklahoma County*, 2003 OK 75, ¶4, 77 P.3d 1069; *St. Clair v. Hatch*, 2002 OK 101, ¶1, 62 P.3d 382.

4. Title 76 O.S. Supp.2005 § 19 (B)(1) providing: "In cases involving a claim for personal injury or death against any practitioner of the healing arts or a licensed hospital, or a nursing facility or nursing home licensed pursuant to Section 1–1903 of Title 63 of the Oklahoma Statutes arising out of patient care, where any person has placed the physical or mental condition of that person or deceased person by or through whom the person rightfully claims, that person shall be deemed to waive any privilege granted by law concerning any communication made to a physician or health care provider with reference to any physical or mental condition or any knowledge obtained by the physician or health care provider by personal examination of the patient; provided that, before any communication, medical or hospital record, or testimony is admitted in evidence in any proceeding, it must be material and relevant to an issue therein, according to existing rules of evidence. Psychological, psychiatric, mental health and substance abuse treatment records and information from psychological, psychiatric, mental health and substance abuse treatment practitioners may only be obtained provided the requirements of Section 1–109 of Title 43A of the Oklahoma Statutes are met." No issue of waiver of the privilege exists here as the treatment received by Elam is the basis of the negligence claim. Because the waiver provision

is substantially similar to the statutory language considered in *Seaberg v. Lockard*, 1990 OK 40, 800 P.2d 230 and *Johnson v. District Court of Oklahoma County*, 1987 OK 47, 738 P.2d 151, reference is to the current statute.

5. 45 C.F.R. § 164.512(e)(1) providing in pertinent part:

"Standard. Disclosures for judicial and administrative proceedings.
(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
(i) **In response to an order of a court** or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order ..." [Emphasis provided.]

6. *Bayne v. Provost*, 359 F.Supp.2d 234, 240 (N.D.N.Y.2005) [Allowing *ex parte* communications with health care providers when "court order" exception to HIPAA was present.]. See also, *In re Vioxx Products Liability Litigation*, 230 F.R.D. 473, 477 (E.D.La.2005), *modified on other grounds*, 2005 WL 2036797 (E.D.La.2005) [Just option in the case was to protect the relationship between a doctor and patient by restricting defendants from conducting *ex parte* communications with plaintiffs' treating physicians but allowing plaintiffs' counsel to engage in *ex parte* interviews with those doctors who have not been named as defendants.]. But see, *Crenshaw v. MONY Life Ins. Co.* 318 F.Supp.2d 1015, 1028 (S.D.Cal.2004) [Providing that HIPAA does not authorize *ex parte* contacts with healthcare providers.]; *Law v. Zuckerman*, 307 F.Supp.2d 705, 712 (D.Md.2004) [Although defense counsel's pre-trial contacts with physician violated HIPAA, remedy of precluding defense counsel from having any further *ex parte* communications with physician was not warranted.]. See also, discussion of additional case law in footnote 13, infra.

7. Title 76 O.S. Supp.2005 § 19, see note 4, supra.

¶3 Our favorable resolution of the issue regarding *ex parte* communications requires us to examine the order issued for compliance with 76 O.S. Supp.2005 § 19 and 12 O.S. Supp.2004 § 2503(D)(3).[8] Furthermore, we must determine whether the order adequately advises physicians that they may not be compelled to participate in oral *ex parte* communications.

¶4 Although the order refers to the statutory requirements of 76 O.S. Supp.2005 § 19 and 12 O.S. Supp.2004 § 2503(D)(3), we hold that its language is overly broad and that it falls short of meeting the statutorily imposed standards. The statutes clearly limit any discoverable materials to information relevant to the claims or defenses asserted in the malpractice action or to the injury or death in litigation. Furthermore, the order does not advise clearly that no physician may be compelled to participate in *ex parte* communications. Therefore, jurisdiction is assumed, the writ is granted and the cause is remanded for entry of an order consistent with this opinion.

## FACTS

¶5 On October 14, 2005, Theresa Lee Elam (Elam/patient/decedent) was injured in an automobile accident. Elam died on February 23, 2006, while under the care of Interim Healthcare of Tulsa and St. John Health System, Inc. On April 11, 2006, Holmes filed suit on behalf of Elam's estate asserting claims of medical negligence against the health care providers. The following week, an amended petition was filed identifying St. John Medical Center, Inc. as a defendant and medical provider.

¶6 Following Holmes' failure to execute allegedly HIPAA-compliant medical authorizations provided by St. John, the hospital filed a motion to dismiss or in the alternative an application for release of protected health information on May 19, 2006. Interim filed a notification of intent to obtain protected health care information on June 27, 2006. In an order signed on that date and filed on July 5, 2006, the trial court ordered the release of Elam's protected health care information "pursuant to 76 O.S. § 19(B), 12 O.S. § 2503(D)(3) and 45 C.F.R. § 164.512(e)(1)(i) of the Health Insurance Portability and Accountability Act" which authorized the patient's health care providers to "orally communicate and to discuss such 'protected health information' if they choose with the parties' attorneys of record in this action."[9]

8. Title 12 O.S. Supp.2004 § 2503(D)(3) providing in pertinent part:
  "The privilege under this Code as to a communication relevant to the physical, mental or emotional condition of the patient in any proceeding in which the patient relies upon that condition as an element of the patient's claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of the party's claim or defense is qualified to the extent that an adverse party in the proceeding may obtain relevant information regarding the condition by statutory discovery ..."

9. The trial court's order, filed on July 5, 2006, providing in pertinent part:
  "... ORDER AUTHORIZING RELEASE OF *PROTECTED HEALTH INFORMATION*
  This matter comes before this Court for determination on the 27th day of June, 2006, on the Motion of Defendant, St. John Medical Center, Inc., for Order Directing Release of Protected Health Information. Having reviewed the pleadings of the parties, the Court finds that the Plaintiff has placed the physical condition of Teresa Lee Elam in issue by the filing of this litigation and has waived any privilege granted by law concerning any communication made to a physician or other health care provider with reference to the physical condition or any knowledge obtained by the physician or health care provider by personal examination of Teresa Lee Elam.
  Accordingly, pursuant to 76 O.S. § 19(B), 12 O.S. § 2503(D)(3), and 45 C.F.R. § 164.512(e)(1)(i) of the Health Insurance Portability and Accountability Act ("HIPAA"), the Court FINDS and it is hereby ORDERED, ADJUDGED, AND DECREED by the Court as follows:
  1. Health care providers of Teresa Lee Elam, (i.e., 'covered entities'), are authorized to disclose 'protected health information' (P.H.I.) which includes documentation related to hospitalizations including but not limited to all examinations, treatment, radiographic imaging films, emergency room records, outpatient records, hospital charts, billing statements, or results of any diagnostic study and any other materials pertinent to Ms. Elam's medical condition;
  2. Health care providers of Teresa Lee Elam are authorized to testify in jury trial, depositions, and before this Court about information contained in any record of any health care providers care and treatment of Teresa Lee Elam;

¶ 7 Holmes filed an application to assume original jurisdiction and petition for writ of prohibition on September 13, 2006. The health care providers filed their responses on September 29th.

## ¶ 8 A COURT ORDER PERMITTING, RATHER THAN MANDATING, ORAL COMMUNICATION WITH HEALTH CARE PROVIDERS ENTERED AS A RESULT OF AN INDIVIDUAL CLEARLY PLACING MENTAL OR PHYSICAL CONDITIONS IN ISSUE BY FILING SUIT DOES NOT CONTRAVENE HIPAA'S CONFIDENTIALITY REQUIREMENTS.

■■■ ¶ 9 Holmes argues that the trial court's order allowing *ex parte* oral communications with Elam's health care providers violates HIPAA's confidentiality requirements. Nevertheless, she recognizes that HIPAA allows the disclosure of protected health information pursuant to court order.[10] Essentially, Holmes contends that only an order compelling the release of protected health care information, rather than an order allowing such release, will satisfy HIPAA requirements. In contrast, the health care provider asserts that the order issued is HIPAA compliant and conforms with this Court's holdings in *Seaberg v. Lockard,* 1990 OK 40, 800 P.2d 230 and *Johnson v. District Court of Oklahoma County,* 1987 OK 47, 738 P.2d 151. **Here, we address *Seaberg* and *Johnson* only to the extent that they relate**

to the issuance of such an order—not as to whether the order issued conforms in all respects with these opinions.

¶ 10 a) **Federal regulations governing the procedural requirements and safeguards imposed by HIPAA clearly anticipate disclosures of protected health information pursuant to a court order.**

¶ 11 Congress enacted HIPAA in 1996 entrusting the Secretary of the Department of Health and Human Services (Secretary) with the task of the creation of national standards to ensure the integrity and confidentiality of individually identifiable health information.[11] Thereafter, the Secretary promulgated 45 C.F.R. § 164.512. Subsection (e) of the regulation specifically addresses disclosures for judicial and administrative procedures providing two situations in which covered entities may release protected health information:

"... (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

(i) **In response to an order of a court** or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii) In response to a subpoena, discovery request, or other lawful process ..." [Emphasis supplied.]

---

3. Health care providers of Teresa Lee Elam are authorized to orally communicate and to discuss such 'protected health information' if they choose with the parties' attorneys of record in this action; and

4. All medical records obtained pursuant to this Order shall be made available and provided to all parties of this litigation. Further, the parties and their counsel may discuss with each other any protected health information of Teresa Lee Elam.

IT IS SO ORDERED this 27th day of June, 2006...."

10. Holmes' brief in support of application to assume original jurisdiction and petition for writ of mandamus providing in pertinent part at p. 9:

"... Section 164.512(e) sets for [sic] the standards for disclosures for judicial and administrative proceedings. Since the case below is a

judicial proceeding, it appears that this subpart would apply here. Section 164.512(e)(1) deals with permitted disclosures and states: A covered entity may disclose protected health information in the course of any judicial or administrative proceeding ... in response to an order of a court ... or ... in response to a subpoena, discovery request or other lawful process ... if [either the other side has been given notice of the request or there is a qualified protective order in place]...."

Admissions in a brief may be considered as a supplement to the appellate record. *McClure v. ConocoPhillips Co.,* 2006 OK 42, ¶ 7, 142 P.3d 390; *King v. King,* 2005 OK 4, ¶ 16, 107 P.3d 570; *Keating v. Edmondson,* 2001 OK 110, ¶ 9, 37 P.3d 882.

11. See generally, 42 U.S.C. § 13200–2. See also, *Smith v. American Home Products Corp.,* note 23, infra.

The clear language of the regulation anticipates not only that there may be disclosures pursuant to the filing of a lawsuit but that the disclosures may be allowed where a court order so provides. Here, the first condition is met—the court order clearly allows such disclosures.

¶ 12 The defendant and the medical provider argue essentially that, as long as there is an order signed by a judge, there is no limit on the scope of disclosure of protected health information under section 19(B) or HIPAA. They argue that, because the HIPAA regulations provide for disclosure "in response to an order of a court" under section 164.512(e)(1)(i), no restriction on the scope of disclosure applies. That argument, however, ignores the rest of the sentence which requires the "covered entity [to disclose] only the protected health information expressly authorized by such order." [12] Clearly a limitation on the scope of permitted disclosure is imposed. The source of that limitation is the privacy requirements enumerated at § 164.512(e)(1)(ii-vi). The privacy requirements of HIPAA apply whether or not there is court authorization for the disclosure of protected medical information. In other words, HIPAA does not prohibit *ex parte* communication through a HIPAA-compliant court authorization. This holding is supported by federal jurisprudence.

¶ 13 b) **Although there is little federal jurisprudence on the issue of *ex parte* communications under HIPAA, the existing case law supports a finding that such contact should be allowed when, as here, a court order exists allowing the communication.**

¶ 14 Holmes relies on two cases—*Law v. Zuckerman*, 307 F.Supp.2d 705 (D.Md.2004) and *Crenshaw v. MONY Life Ins. Co.*, 318 F.Supp.2d 1015 (S.D.Cal.2004)—for the proposition that *ex parte* contacts are prohibited under HIPPA and that protected medical information may only be released pursuant to formal discovery procedures. The reliance is misplaced.

¶ 15 The *Law* court determined that Maryland law, which did not prohibit *ex parte* communications between a lawyer and the treating physician of an adverse party, was not as stringent as HIPAA. Therefore, the federal law was found to preempt the Maryland statute. Nevertheless, the federal court recognized that disclosures should be allowed when strict compliance with HIPAA occurred. Finally, the *Law* court determined that: 1) defense counsel had exercised reasonable diligence in attempting to guarantee that physician contacts did not violate HIPAA; 2) the Secretary-promulgated rules restrict the ability of health care providers to divulge patient medical records without express consent of the patient **or pursuant to a court order;** and 3) **a court order allowing either party to speak with the plaintiff's physician about issues set forth in the party's medical records effectively remedied any potential HIPAA violation.**

¶ 16 In *Crenshaw*, the court held that defense counsel's *ex parte* communications with the opposing party's personal physicians fell beyond HIPAA's requirement that confidential medical information be disclosed pursuant to a court order, subpoena or discovery request. The federal court's determination rested on a finding that all such disclosures must be accompanied by assurances to the healthcare provider that reasonable efforts had been made by the party to secure a qualified protective order. Because no protective order had issued, the *Crenshaw* Court determined that HIPAA's disclosure requirements were violated.

¶ 17 Both *Law* and *Crenshaw* were analyzed in *Bayne v. Provost*, 359 F.Supp.2d 234, 239 (N.D.N.Y.2005). The federal court determined that the true import of the two causes was that **there is no bright line HIPAA rule barring all *ex parte* discussions.** Rather, that such contacts are appropriate once the protections required by

---

**12.** The entire text of the provision permits disclosures in the course of any judicial proceeding:: "(1) in response to an order of a court or administrative tribunal, provided that the covered enti-

ty discloses only the protected health information expressly authorized by such order." See, 45 C.F.R. § 164.512(e)(1), note 5, supra.

HIPAA are met.[13] The New York Court recognized three instances in which oral communications were appropriate: 1) **where, as here, discovery requests are accompanied by a court order;** 2) when a medical provider receives satisfactory assurances that proper notice has been given to the protected person; or 3) when the party attempting to secure the health information has secured a qualified protective order either by agreement or court involvement.

¶18 **c) A court order allowing, rather than mandating, disclosure of protected healthcare information through** *ex parte* **communications conforms with the pre-HIPAA determinations in** *Seaberg v. Lockard* **and** *Johnson v. District Court of Oklahoma County* **holding that where there has been a waiver of the physician/patient privilege pursuant to 76 O.S. Supp.2005 § 19, judicial authority may not be utilized to facilitate or to impede** *ex parte* **communications with a plaintiff's health care providers.**

¶19 Our analysis here is limited to the issue of whether *ex parte* communications are allowed under Oklahoma jurisprudence. *Johnson v. District Court of Oklahoma County,* 1987 OK 47, 738 P.2d 151 involved a medical malpractice action. The trial court issued an order finding the privilege involving protected healthcare information waived and requiring discovery by *ex parte* communication. The *Johnson* Court issued a writ of prohibition to prevent enforcement of the order. The Court held that it was beyond the district court's authority **to** compel discovery by *ex parte* communication.

¶20 Following the teachings of *Johnson,* the memorandum opinion in *Seaberg v. Lockard,* 1990 OK 40, 800 P.2d 230 held that § 19's [14] waiver of the physician/patient privilege in a personal injury action did not authorize the district court's pretrial declaration that no privilege existed. Although the *Seaberg* Court determined that the law sanctioned voluntary *ex parte* communications with physicians and other healthcare providers where no legal privilege existed, it held that judicial authority could not be exercised to facilitate or to impede such informal communications.

¶21 **THE ORDER PRESENTED IS OVERLY BROAD. IT DOES NOT CONFORM WITH THE STATUTORY REQUIREMENTS OF 76 O.S. Supp.2005 § 19 AND 12 O.S. Supp.2004 § 2503(D)(3) NOR DOES IT ADEQUATELY ADVISE PHYSICIANS THAT THEY MAY NOT BE COMPELLED TO PARTICIPATE IN** *EX PARTE* **COMMUNICATIONS.**

¶22 While we agree with the health care providers that a court order permitting, rather than mandating, oral communication with health care providers entered as a result of an individual clearly placing mental or physical conditions in issue by filing suit does not contravene HIPAA's confidentiality requirements, we must now determine whether the order presented conforms with the statutory requirements of 76 O.S. Supp.2005 § 19 [15]

---

13. The court noted in *Bayne v. Provost,* see note 6, supra, promulgated less than a year ago, that there was a paucity of law to assist on the analysis of whether *ex parte* communications are allowed under HIPAA. Prior to *Bayne's* determination, two unpublished decisions had been promulgated which were contrary to the New York Court's decision in *Bayne: In re Vioxx Products Liability Litigation,* 2005 WL 2036797 (E.D.La.2005) and *EEOC v. Boston Market Corp.,* 2004 WL 3327264 (E.D.N.Y.2004). The jurisprudential landscape has changed little since last January. The one published opinion since that time provides that because HIPAA does not directly address *ex parte* communications, they may be allowed under state law.

*Smith v. American Home Products Corp.,* see note 23, infra. In an unpublished opinion in *Hulse v. Suburban Mobile Home Supply Co.,* 2006 WL 2927519 (D.Kan.2006), the Kansas Federal Court determined that where there was a request for a court order allowing the production of medical information and *ex parte* contact all the requirements of HIPAA had been met. See also, *In re Vioxx Products Liability Litigation,* note 6, supra.

14. Title 76 O.S. Supp.2005 § 19, see note 4, supra.

15. *Id.*

and 12 O.S. Supp.2004 § 2503(D)(3).[16] Furthermore, we examine the order's language in light of the risks physicians face when disclosing protected health care information.

¶ 23 **a) The court order does not conform with the statutory requirements of 76 O.S. Supp.2005 § 19 and 12 O.S. Supp. 2004 § 2503(D)(3) precluding general disclosure of all of a party's medical records and restricting discovery to materials relevant to any issue in the malpractice action or to the injury or death in litigation.**

¶ 24 We have determined that 45 C.F.R. § 164.512 clearly anticipates the issuance of court orders allowing *ex parte* communications with physicians. The same regulation limits the information to be disclosed to that "expressly authorized by such order."[17] Here, the order allows access inclusive of, but not limited to, "all examinations, treatment, radiographic imagining films, emergency room records, outpatient records, hospital charts, billing statements, or results of any diagnostic study" and to "**any record of any health care providers care and treatment of Teresa Lee Elam.**"[18] [Emphasis supplied.] The permitted disclosure is too broad.

¶ 25 Information which may be released once a party places its medical condition in issue is limited by 76 O.S. Supp.2005 § 19 and 12 O.S. Supp.2004 § 2503(D)(3) along with causes interpreting the statutory scheme. **Our jurisprudence makes it clear that these statutes preclude the general disclosure of all of a party's medical records and restrict discovery to materials relevant to any issue in the malpractice action or to the injury or death in litigation.**

¶ 26 We consider the limitations placed on *ex parte* communications under the same causes which anticipate such disclosures. *Johnson v. District Court*, 1987 OK 47, ¶ 4,

738 P.2d 151 provides that "[t]he scope of discovery under section 19(B) includes any material relevant to any issue in the malpractice action." *Seaberg v. Lockard*, 1990 OK 40, ¶ 3, 800 P.2d 230 reaffirmed *Johnson*, holding that "[a]lthough the law sanctions *voluntary ex parte communications* with physicians and other health providers where no legal privilege is deemed to exist, *judicial authority may not be exercised to facilitate or impede such information communications.*" [Emphasis in original.] *Seaberg* went on to explain that the waiver of privilege in section 19(B) "is to be viewed as *self-executing*" and that section 19(B) "does not contemplate a judicial order directing or authorizing physicians or other health care providers to make themselves available for ex parte interviews by the legal representatives of a defendant." Further, the *Seaberg* Court recognized that the waiver of patient privilege found in section 19(B) "is imposed by force of law and stands restricted to the injury or death in litigation."

¶ 27 In *Higginbotham v. Jackson*, 1994 OK 8, ¶ 1, 869 P.2d 319, we recognized that no statutory discovery method required a plaintiff in a personal injury lawsuit to execute, in favor of the defendant, a general medical authorization entitling the defendant to obtain all of the plaintiff's medical records. In considering the breadth of § 2503(D)(3), the Court stated "12 O.S. § 2503(D)(3) qualifies the physician/patient privilege 'to the extent that an adverse party in said proceeding may obtain relevant information regarding said condition by statutory discovery.'" *Higginbotham* conforms with the teachings of *Johnson* that "[t]he scope of discovery under section 2503(D)(3) is limited to the issue of the condition raised as an element of the claim or defense."

¶ 28 The challenged order is deficient under both 76 O.S. Supp.2005 § 19 [19] and 12 O.S. Supp.2004 § 2503(D)(3).[20] It places no limit on the scope of the medical information

**16.** Title 12 O.S. Supp.2004 § 2503(D)(E), see note 8, supra.

**17.** 45 C.F.R. § 164.512, see note 5, supra.

**18.** The trial court's order, filed on July 5, 2006, see note 9, supra.

**19.** Title 76 O.S. Supp.2005 § 19, see note 4, supra.

**20.** Title 12 O.S. Supp.2004 § 2503(D)(3), see note 8, supra.

to be disclosed. It is not confined to "material relevant to any issue in the malpractice action" as required by *Johnson*, nor is it "restricted to the injury or death in litigation" as required by *Seaberg*. Furthermore, it is too broad under *Higginbotham*, allowing the health care providers access to "any record of any health care providers care and treatment of Teresa Lee Elam"[21] rather than limiting it to the condition alleged to have caused the patient's injury and resulting death.

¶ 29 **b) An order allowing *ex parte* physician communications should clearly provide that no physician may be compelled to participate in oral *ex parte* communications.**

█ ¶ 30 Pursuant to 42 U.S.C. § 1320d–6 a physician disclosing protected health care information under HIPAA is subject to severe penalties ranging from $50,000 to $250,000 in fines and/or imprisonment running from less than a year to a maximum of not more than 10 years.[22] In light of the exposure, any physician should be advised by the Court's order allowing *ex parte* communication that such correspondence is "purely voluntary and may not be compelled by any party." Although the order here contains permissive language regarding any physician's participation, it does not clearly delineate that such communications may not be compelled.

## CONCLUSION

¶ 31 HIPAA does not expressly bar *ex parte* communications but does require certain procedures. One measure by which such information may be sought is pursuant to a court order specifying the substance of the information to be released.[23] We hold that an order, entered as a result of an individual placing mental or physical conditions in issue by filing suit and containing clearly permissive language in relation to *ex parte* communications, does not contravene HIPAA's confidentiality requirements.[24] The determination is consistent with: procedural requirements and safeguards imposed by HIPAA;[25] extant federal jurisprudence; and this Court's pre-HIPAA determinations in *Johnson v. District Court of Oklahoma County*, 1987 OK 47, 738 P.2d 151 and *Seaberg v. Lockard*, 1990 OK 40, 800 P.2d 230.

¶ 32 The language of the challenged order does not conform with the requirements of 76 O.S. Supp.2005 § 19(B)(1)[26] and 12 O.S. Supp.2004 § 2503(D)(3).[27] It does not limit disclosure to a mental or emotional condition of the patient that is relevant to the claims or defenses asserted in the malpractice action. The order has the potential to allow defense counsel in the malpractice action to obtain all medical and psychological health information of the patient, even information that has nothing to do with the malpractice action. Although the order contains permissive language regarding the participation of any physician in *ex parte* communications, it does not clearly advise doctors that such exchanges may not be compelled. Therefore, we assume jurisdiction, grant the writ and remand the cause for entry of an order consistent with this opinion.[28]

21. The trial court's order, filed on July 5, 2006, see note 9, supra.

22. Title 42 U.S.C. § 1329d–6(b) provides:
"Penalties
A person described in subsection (a) of this section shall—
(1) be fined not more than $50,000, imprisoned not more than 1 year, or both;
(2) if the offense is committed under false pretenses, be fined not more than $100,000, imprisoned not more than 5 years, or both; and
(3) if the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm, be fined not more than $250,000, imprisoned not more than 10 years, or both."

23. *Smith v. American Home Products Corp.*, 372 N.J.Super. 105, 855 A.2d 608, 621 (2003).

24. The trial court's order, filed on July 5, 2006, see note 9, supra.

25. 45 CF.R. § 164.512(e)(1), see note 5, supra.

26. Title 75 O.S. Supp.2005 § 19(B)(1), see note 4, supra.

27. Title 12 O.S. Supp.2004 § 2503(D)(3), see note 8, supra.

28. In reaching our decision today, we consider federal precedent. Nevertheless, our determination rests squarely within Oklahoma law which

**ORIGINAL JURISDICTION ASSUMED; WRIT GRANTED; CAUSE REMANDED.**

ALL JUSTICES CONCUR.

OPALA, J., with whom WINCHESTER, C.J., and TAYLOR, J., join, concurring

¶ 1 A privilege that protects one's health information from being disclosed may be waived or lost by operation of law. Persons whose lawsuit places in issue their physical or mental condition relinquish *pro tanto* the privilege of nondisclosure. As **the privilege** itself, so also **its waiver** is law-imposed and self-executing.[1] For its effectiveness neither requires nor depends on an antecedent judicial declaration.[2]

¶ 2 When the privilege is believed no longer to obtain, *ex parte* communications with a medical provider of the opposing party will be neither judicially impeded nor compelled. A court order that **allows or authorizes but does not require** oral communications with the opposite party's health care providers is not impermissible, but its terms must be confined to a patient's mental or emotional condition that is relevant to the claims or defenses which are at issue in the action.

¶ 3 Allowing the judiciary to be cast into a more extensive role in the process of voluntary *ex parte* negotiations for access to information would indeed be damaging to its constitution-commanded posture of **absolute detachment and neutrality.** We are clearly duty-bound to protect judges from the brink of exposure to a grave threat to both their image as well as to the reality of their law-exacted impartiality. If voluntary negotiations for securing the no-longer-protected disclosure should fail, the party seeking the information's release is *eo instante* relegated by law to the process of discovery.[3]

¶ 4 Ground rules for *ex parte* communications about and disclosures of unprivileged health information are long overdue. Appellate crafting of legal norms for this litigation-related activity must follow the pattern of other jurisprudence. Litigants and health care providers **should** tender to the trial court specific issues appropriate to the controversy before it. Appellate courts' norm-making **will** concern itself primarily with conformity of ground rules to be established to the requirements of due process that must assure the adversary parties as well as the health-care providers of optimum fundamental protection and fairness. Judges shall abstain from giving off-the-record advice to the parties or to non-party actors. In short, *ex parte* communications **about** and disclosures **of** unprivileged health information shall be subjected to trial-court regulation whenever problems are properly called to judicial attention.

¶ 5 The **court correctly concludes today** that (1) Oklahoma jurisprudence is not inconsistent with "the procedural requirements and safeguards imposed by HIPAA"—the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320(d) et seq; (2) the order is deficient because it does not restrict the disclosure to be obtained to the patient's mental or emotional condition that is relevant to the claims or defenses which are at issue in the action; and (3) the order does not clearly advise the physicians that informal health information exchanges may not be compelled.

¶ 6 I hence concur in granting petitioner's quest for a writ of prohibition that should cure the defects presently in the order.

COLBERT, J., concurring.

¶ 1 Today this Court examines the effect of HIPAA on the pre-discovery practice of in-

---

provides *bona fide,* separate, adequate and independent grounds for our decision. *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983).

**1.** *Seaberg v. Lockard,* 1990 OK 40, 800 P.2d 230, 231–232; *Robinson v. Lane,* 1971 OK 9, 480 P.2d 620, 621–22, see also *Brandt v. Medical Defense Associates,* 856 S.W.2d 667, 669–670 (Mo.1993); *Vredeveld v. Clark,* 244 Neb. 46, 504 N.W.2d 292, 300 (1993) ("Courts have generally held that

filing a personal injury claim waives the physician-patient privilege as to information concerning the health and medical history relevant to matters which plaintiff has placed at issue").

**2.** *Seaberg v. Lockard, supra* note 1.

**3.** 76 O.S. Supp 2005 § 19(B)(1); *Seaberg v. Lockard, supra* note 1; *Johnson v. District Court of Oklahoma County,* 1987 OK 47, 738 P.2d 151.

formal *ex parte* communication between a plaintiff's medical provider and defense counsel in a medical malpractice action. I concur in the Court's determination that HIPAA does not prohibit court authorization of that practice provided that the court order limits the scope of such disclosure pursuant to section 19(B) and section 2503(D)(3), and further that it complies with the privacy limitations imposed by HIPAA. I write separately to further explain the historical and jurisprudential context of today's decision.

## SECTION 19(B) AND PRE–HIPAA DECISIONS

¶ 2 Before the HIPAA privacy regulations were enacted in 2003, this Court unquestionably permitted the practice of *ex parte* communication pursuant to section 19(B). Two decisions described the method and circumscribed the scope of that practice: *Johnson v. District Court,* 1987 OK 47, 738 P.2d 151, and *Seaberg v. Lockard,* 1990 OK 40, 800 P.2d 230.

¶ 3 *Johnson* and *Seaberg* describe an informal method of pre-discovery. Those decisions view section 19(B) as a self-executing waiver of privilege limited to the issues and injury involved in the malpractice action. If this Court were to validate the challenged order, it would dramatically expand the scope of section 19(B)'s self-executing waiver of privilege to *all* protected health information. Such an unbounded order would result in unlimited *ex parte* communication by court order contrary to the limitations on the scope of the section 19(B) waiver of privilege articulated in *Johnson* and *Seaberg.* The fact that the waiver is self-executing does not justify a determination that its scope is unlimited.

¶ 4 It is important to note that the medical provider sought the challenged order only after Plaintiff refused to execute an *unlimited* authorization that did not comply with HIPAA. The order appears designed to assure physicians and other health care providers that they will not violate HIPAA no matter the method or degree of communication or the scope of the protected health information they disclose to counsel. For what other reason, while in pre-discovery,

would a medical provider seek a court order to authorize the release of information that is available informally under section 19(B) through *ex parte* communication? The challenged order would not have been presented to the trial court but for the enactment of the HIPAA regulations limiting the disclosure of protected health information.

## EFFECT OF HIPAA ON *EX PARTE* COMMUNICATIONS

¶ 5 HIPAA was enacted to, among other things, "ensure the integrity and confidentiality of [patient] information" 42 U.S.C. § 1320d–2(d)(2)(A). The Act authorizes the Department of Health and Human Services to enact regulations to further that goal. In 2003, the privacy rules became effective, including the litigation provision found at section 164.512(e). At that time, Oklahoma was one of only fifteen states that permitted the practice of informal *ex parte* communication between a patient's medical provider and opposing counsel in a malpractice action. Daniel M. Roche, *Don't Ask, Don't Tell: HIPAA's Effect on Informal Discovery in Products Liability and Personal Injury Cases,* 2006 B.Y.U.L.Rev. 1075, 1083–84. Twenty-four states prohibited the practice. *Id.* Litigation began immediately in state and federal courts concerning the effect of HIPAA in that minority of states that permitted the practice.

¶ 6 In Oklahoma, the Oklahoma State Medical Association and the Oklahoma Hospital Association made a joint request to the Secretary of the Department of Health and Human Services for an exception to any preemptive effect of HIPAA on section 19(B). The Secretary delegated the decision on such requests to the Office for Civil Rights. On June 24, 2003, the Director of that office issued his response to the request.

¶ 7 The response began by quoting the exemption request which noted that section 19(B) permits defense counsel in a medical malpractice action "to gather medical records and/or conference with willing health care providers without the necessity of a patient authorization, subpoena, or court order." After analyzing section 19(B) and HIPAA, the

response concluded that there was no preemption issue because "covered entities can comply with both [section] 19(B) and 45 C.F.R. § 164.512(e)(1)(ii)-(vi). It is neither impossible for a health care provider to comply with both statutes, nor is complying with the Oklahoma statute an obstacle to the accomplishment or execution of the purposes and objectives of HIPAA." Thus, no exemption was required because preemption was not an issue.

¶ 8 Apparently, this was not the answer that the medical and hospital associations wanted to hear. Having been told precisely the requirements for limiting *ex parte* communication in order to comply with state and federal law, medical providers and defense counsel began to request court "authorizations" in an apparent attempt to circumvent those requirements. These attempts have met with varying degrees of success as demonstrated by the orders included in the Appendix to Plaintiff's Application to Assume Original Jurisdiction and Petition for Writ of Prohibition. Some Oklahoma judges have imposed limits on the disclosure permitted pursuant to *ex parte* communication authorizations presented for their signature and some have not.

¶ 9 Today this Court rejects the argument that an authorization signed by a judge need not comply with the HIPAA privacy requirements enumerated at section 164.512(e)(1)(ii-vi). The rejection of that argument is entirely consistent with the decisions of the state and federal courts that have examined the effect of HIPAA on provisions of state law

which permit *ex parte* communication. Each of these decisions has either held that HIPAA prohibits such communication without patient authorization[1] or has limited the scope of disclosure by applying the HIPAA privacy requirements in addition to the requirements of state law.[2] "[I]n the time following HIPAA's passage, no court in the United States has held that ex parte interviews with a plaintiff's treating physician are permitted absent some sort of formal restriction." Roche, *supra*, at 1091. Thus, today's recognition of the limitations imposed by state and federal law is well within the mainstream of post-HIPAA decisions concerning *ex parte* communication.

### PREVENTION OF UNFAIR TACTICAL ADVANTAGE

¶ 10 Proponents of the challenged order sought to expand completely the scope of permissible disclosure of protected health information. The challenged order would have allowed defense counsel in a malpractice action *to obtain all medical and psychological health information of a patient,* even information that had nothing to do with the malpractice action. The fact that the irrelevant information may not be admitted at trial would not remedy the unfair tactical advantage that access to the information would provide to defense counsel.

¶ 11 If this Court were to validate a broad general order like the one challenged in this action, it would effect a radical change in the manner in which protected health informa-

1. *Crenshaw v. MONY Life Ins. Co.,* 318 F.Supp.2d 1015, 1029 (S.D.Cal.2004)("Only formal discovery requests appear to satisfy the requirements of § 164.512(e)."); *Law v. Zuckerman,* 307 F.Supp.2d 705, 711 (D.Md.2004) ("Informal discovery of protected health information is now prohibited unless the patient consents."); *EEOC v. Boston Market Corp.,* 2004 WL 3327264 at *5 (E.D.N.Y. Dec.16, 2004)("ex parte communications regarding the disclosure of health information, while not expressly prohibited by HIPAA, create ... too great a risk of running afoul of that statute's strong federal policy in favor of protecting the privacy of patient medical records").

2. *Hulse v. Suburban Mobile Home Supply Co.,* 2006 WL 2927519 at *2 (D.Kan. Oct.12, 2006)(proposed order granting *ex parte* inter-

views with treating physicians "clearly state[s] what medical information is covered by the Orders thus allowing any medical providers to assure themselves that they are in compliance with the HIPAA requirements"); *In re Vioxx Prods. Liab. Lit.,* 2005 WL 2036797 at *4 (E.D.La. July 22, 2005)(court recognized that it must consider HIPAA in determining whether to allow *ex parte* communications with medical providers); *Bayne v. Provost,* 359 F.Supp.2d 234 (N.D.N.Y.2005)(qualified protective order entered to make request for *ex parte* communication comply with HIPAA); *Smith v. Am. Home Prods. Corp.,* 372 N.J.Super. 105, 855 A.2d 608, 626 (2003)(broad use of informal discovery procedures "must somehow be readjusted to ensure compliance with the federal objectives under HIPAA").

tion would be obtained. If a malpractice plaintiff would not sign an authorization that set no limits on disclosure under state or federal law, such an authorization would simply be presented for the trial judge's signature. The same general order presented in this matter, having been validated by this Court, would become the standard order presented for the trial judge's signature in all future proceedings. The disclosure of protected health information would then take place without the plaintiff's knowledge of the event or the knowledge of which protected health information was disclosed. Irrelevant and potentially embarrassing information would become available to defense counsel solely for tactical advantage. Such a result would be contrary to HIPAA's strong public policy in favor of protecting health information from unnecessary disclosure and it would be contrary to state and federal law.

## CONCLUSION

¶ 12 This Court has determined that *ex parte* communication remains viable following the enactment of the HIPAA privacy regulations provided that the court order which authorizes such communication complies with the requirements of state law and with HIPAA. By doing so, this Court has upheld its jurisprudence concerning *ex parte* communication while giving effect to the limitations that HIPAA imposes on the disclosure of protected health information.