■ JOAN D'ADAMO, as Guardian of STEVEN OSCAR HERRERA, Appellant, v SAINT DOMINIC'S HOME, Respondent. [929 NYS2d 301]—

From June 2003 through October 7, 2004, Steven Oscar Herrera, an individual with mental retardation, cerebral palsy, and autism, was a resident of a group home owned and operated by the defendant.

On October 7, 2004, Herrera, then 19 years old, was rushed from the defendant's group home to Jacobi Medical Center, where he underwent exploratory laparotomy, resection of two-thirds of the distal portion of his tranverse colon, and a colostomy for fecal impaction and a "dead colon."

The plaintiff, Joan D'Adamo, as Herrera's guardian, commenced this action against the defendant to recover damages for negligence and medical malpractice. On December 18, 2007, counsel for the parties appeared for a preliminary conference. According to the preliminary conference order, signed by both counsel, the physical examination of Herrera, by a doctor of the defendant's choosing, would be performed within 45 days of completion of the plaintiff's deposition.

By letter dated October 5, 2010, the defendant's attorney ad-

vised counsel for the plaintiff that the defendant designated Dr. Bruce S. Gingold, of Manhattan Colorectal Surgeons, to perform a physical examination of Herrera. In a letter dated October 6, 2010, counsel for the plaintiff rejected the defendant's notice, inter alia, on the basis that it was not in the interest of justice for a physical examination to be performed on Herrera, relying on 22 NYCRR 202.17. The plaintiff's counsel contended that this would be so since the defendant's expert would not be permitted to perform any invasive studies on Herrera, who was not communicative. In any event, the plaintiff's counsel pointed out that a significant amount of Herrera's colon had been removed and, therefore, the defendant's expert should rely solely on a review of Herrera's medical records as an examination would be pointless.

The plaintiff then moved to vacate the defendant's notice of physical examination pursuant to 22 NYCRR 202.17 (a) or, in the alternative, for a protective order pursuant to CPLR 3103 (a).

In opposition, the defendant argued that it was entitled to a physical examination of Herrera since his physical condition had been placed into controversy. Moreover, it contended that it would be placed at a disadvantage in defending itself in this action if it was deprived of the opportunity to conduct such an examination by a doctor of its choosing since the plaintiff alleged that Herrera would require a colostomy bag for the rest of his life, establishing the need for an examination by Dr. Gingold. In addition, it claimed that an examination was necessary given the plaintiff's allegations of surgical scarring and edema to all of Herrera's extremities as a result of the defendant's alleged negligence.

In her attorney's reply affirmation, the plaintiff agreed to produce Herrera for the physical examination in light of the defendant's willingness to pay all of the costs associated with transporting Herrera to and from Dr. Gingold's office, and any required supervision of Herrera for the physical examination. However, the plaintiff indicated that she would object to any invasive procedures such as a colonoscopy, any radiological studies, or the removal of Herrera's colostomy bag during Dr. Gingold's examination.

In an order dated November 16, 2010, the Supreme Court requested a sworn statement from Dr. Gingold detailing the procedures to be performed during the examination. The Supreme Court provided that the plaintiff would be allowed to respond.

Dr. Gingold submitted an affidavit in response to the Supreme

Court's order, explaining that he intended to perform a rigid sigmoidoscopy. He contended that the procedure would "take a few minutes and [wa]s not dangerous or painful" and there had been no complications from "any straightforward sigmoidoscopies [he] ha[d] performed." He did not anticipate the use of anesthesia. In the event that Herrera's rectum had to be stretched digitally, Dr. Gingold stated that he would apply topical anesthesia. Dr. Gingold opined that, since Herrera had a limited amount of sigmoid and rectum remaining, it was unlikely that Herrera would feel any cramps following the procedure.

Dr. Gingold also intended to examine Herrera's abdomen and the colostomy bag to determine if any issues were present which would prevent reversal of the colostomy or resolution of the irritation in the vicinity of the colostomy as testified to by D'Adamo during her deposition.

In response, the plaintiff submitted an affirmation from Dr. Jeffrey Freed, who explained that a rigid sigmoidoscopy involves placing a rigid instrument in a person's rectum up to the sigmoid colon. He contended that "[a]s with any surgical procedure, there are risks and such a procedure can not be classified as being 'not dangerous,' as indicated by [Dr. Gingold]." He also stated that there was a risk of perforation to the remaining colon and rectum if there was any movement by Herrera, which was likely given Herrera's inability to comprehend or follow commands to remain still.

Dr. Gingold then submitted a supplemental affidavit in which he acknowledged that there was a chance Herrera would move during the procedure. Given that possibility, Dr. Gingold would first examine Herrera digitally and would only perform the rigid sigmoidoscopy, with a smaller pediatric sigmoidoscope and without sedation, if Herrera tolerated the digital examination. If Herrera did not tolerate the digital examination, Dr. Gingold could sedate Herrera intravenously during the procedure for a total of approximately two minutes.

Upon receiving the additional submissions, the Supreme Court, inter alia, denied the plaintiff's motion and directed Herrera to undergo the physical examination as noticed by the defendant and as outlined in the affidavits of Dr. Gingold. The plaintiff appeals.

With respect to the denial of that branch of the plaintiff's motion which was for a protective order, the Supreme Court improvidently exercised its discretion. While CPLR 3101 (a) provides that "[t]here shall be full disclosure of all matter material and necessary in the prosecution . . . of an action," "the principle of 'full disclosure' does not give a party the right to

uncontrolled and unfettered disclosure" (*JFK Family Ltd. Partnership v Millbrae Natural Gas Dev. Fund 2005, L.P.*, 83 AD3d 899, 900 [2011]; *see Buxbaum v Castro*, 82 AD3d 925 [2011]; *Peluso v Red Rose Rest., Inc.*, 78 AD3d 802 [2010]; *Foster v Herbert Slepoy Corp.*, 74 AD3d 1139 [2010]; *Gilman & Ciocia, Inc. v Walsh*, 45 AD3d 531 [2007]).

When a particular discovery demand is inappropriate, the court may "make a protective order" with respect to that demand (CPLR 3103 [a]). "Such order shall be designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person" (*id.*).

Even though a defendant is entitled to thoroughly examine a plaintiff who puts his or her physical and/or mental condition in issue (*see Louis v Cohen*, 221 AD2d 509 [1995]; *Healy v Deepdale Gen. Hosp.*, 145 AD2d 413 [1988]), a plaintiff may not be compelled to undergo objective testing procedures when it is established that the tests are invasive, painful and harmful to the person's health (*see Rosario v BNS Bldgs., LLC*, 67 AD3d 984 [2009]; *Santero v Kotwal*, 4 AD3d 464, 465 [2004]; *Bobka v Mann*, 308 AD2d 497, 498 [2003]; *Marino v Pena*, 211 AD2d 668, 668-669 [1995]; *Lapera v Shafron*, 159 AD2d 614 [1990]).

Here, the plaintiff met her initial burden of showing that the procedures which Dr. Gingold intended to perform on Herrera were potentially harmful and clearly invasive (*see Rosario v BNS Bldgs., LLC*, 67 AD3d 984 [2009]; *Santero v Kotwal*, 4 AD3d at 465; *Bobka v Mann*, 308 AD2d at 498; *Marino v Pena*, 211 AD2d at 668-669; *Lefkowitz v Nassau County Med. Ctr.*, 94 AD2d 18, 21 [1983]). In response, the defendant failed to establish that the intended procedures would not be harmful to Herrera (*see Marino v Pena*, 211 AD2d 668 [1995]; *Lefkowitz v Nassau County Med. Ctr.*, 94 AD2d 18 [1983]). Accordingly, the Supreme Court should have granted that branch of the plaintiff's motion which sought a protective order prohibiting the defendant's expert, Dr. Gingold, from performing invasive procedures, including, but not limited to, a rigid sigmoidoscopy, on Herrera during the defense physical examination.

In her reply affirmation, the plaintiff agreed to produce Herrera for a physical examination by Dr. Gingold, in effect, on condition that the defendant pay all of the costs associated with the transport of Herrera to and from the defendant's designated physician, and any required supervision of Herrera for the physical examination, and upon the further condition that no invasive procedures be performed upon Herrera. In the order appealed from, the Supreme Court directed the defendant to pay those costs. Accordingly, in light of our determination above,

that part of the order which, in effect, denied that branch of the plaintiff's motion which sought an order vacating the defendant's notice seeking a physical examination of Herrera has been rendered academic and therefore the appeal therefrom must be dismissed. Rivera, J.P., Skelos, Hall and Austin, JJ., concur.